IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILLIAN HENTZ | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-2007 |
| | : | |
| ALLSTATE PROPERTY AND | : | |
| CASUALTY INSURANCE COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                    **January 31, 2020**

  Plaintiff Lillian Hentz alleges Defendant Allstate Property and Casualty Insurance Company must pay for damage to her house. She also alleges Allstate acted in bad faith when it denied her insurance claim for this damage. Allstate argues the damage is not covered under its policy and it did not act in bad faith. Allstate moves for summary judgment. The Court will deny the motion in part because there are disputed issues of fact concerning what caused the damage to Hentz's house. However, the Court will grant the motion in part because no reasonable jury could find Allstate acted in bad faith.

**BACKGROUND[1]**

  On January 23, 2019, a wall in Hentz's house collapsed. Hentz's house was insured by Allstate so Hentz filed an insurance claim. Under Hentz's insurance policy, damage from a collapsed wall would be covered if it was "a sudden and accidental direct physical loss caused by . . . weight of persons, animals, equipment or contents." Allstate's Mot. for Summ. J., App., A153. A collapse is not covered, however, if it is caused by "wear and tear, aging, marring, scratching, deterioration" or "settling, cracking, shrinking, bulging or expansion of . . . foundations." *Id.* at A154. A collapse is also not covered if it is caused by "[e]arth movement of any type, including . . . the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of

---

[1] Unless otherwise noted, these facts are undisputed.

1

the earth." *Id.* at A155. When a collapse has two or more causes, it is not covered by the policy if "the predominant cause(s) of loss is (are) excluded under [the policy]." *Id.* at A155, A156.

Soon after the collapse, Allstate began investigating Hentz's claim. Allstate hired Donan, a forensic engineering company, to determine the cause of the collapse. On January 31, 2019, Donan reported to Allstate that the collapse was caused by problems with the house's foundation and gradual movement of the soil under the house. Hentz disputes Donan's explanation of the collapse. According to Hentz's expert, the collapse was not the result of "soil movement, [or] settlement." *Id.* at A10. Instead, Hentz's expert opined that the collapse was caused by "a combination of the eccentric loading of the brick wall on the outer half of the stone basement wall, and deterioration of the stone wall." *Id.*

A few weeks after the collapse, on February 5, 2019, Allstate sent a letter to Hentz denying her insurance claim. This letter said the collapse was not covered because it was not "sudden and accidental." *Id.* at A93. The letter also said the collapse may be subject to the policy's exclusions for damage caused by deterioration, earth movement, and settling of foundations.

After Allstate denied the claim, Jonathan Wheeler, Hentz's counsel, sent several emails to Allstate's general claims email address. In the first email dated February 21, 2019, Wheeler attached Hentz's expert report and asked Allstate to "reconsider [its] denial of [Hentz's] claim." Hentz's Opp. to Mot. for Summ. J., Ex. 1 at 2. Wheeler also notified Allstate that the city was threatening to demolish Hentz's house. After sending this first email, Wheeler sent several follow up emails in March asking Allstate to respond to his request for reconsideration. Finally, on April 3, Wheeler sent Allstate an email saying the city had begun demolishing Hentz's house.

Hentz filed this lawsuit against Allstate on April 9, 2019. She brought claims for breach of contract and bad faith based on Allstate's denial of insurance coverage for the collapsed wall. Allstate now moves for summary judgment on both claims in the Complaint.

**DISCUSSION**

The Court will deny summary judgment on the breach of contract claim but grant summary judgment on the bad faith claim. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007) (internal citations omitted). If, viewing the facts in this light, a reasonable jury could find for the nonmovant, then summary judgment must be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

There are disputed issues of fact which preclude summary judgment on Hentz's breach of contract claim. To prove her breach of contract claim, Hentz must show "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). The element at issue here is breach. Viewing the facts in the light most favorable to Hentz, a jury could find that Allstate breached the contract by not reimbursing Hentz for the collapsed wall.

The jury could find the collapse was covered by the policy because it was "a sudden and accidental direct physical loss caused by . . . weight of persons, animals, equipment or contents." Mot. for Summ. J., App., A153. Although the collapse may have been caused in part by long term

deterioration, the jury could still find the collapse itself was sudden.[2] *See, e.g.*, *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 667 (W.D. Pa. 2012) (while examining the same Allstate agreement, finding "a genuine issue of fact as to whether the wall's collapse was sudden and accidental" when the parties agreed that deterioration was one cause of the wall's collapse). The jury could also find the collapse was caused by weight on the wall. Hentz's expert report described "eccentric loading" and a "significant vertical load" on the wall. Mot. for Summ. J., App., A10. Both these phrases in the report are synonyms for weight on the wall. The jury could use these findings in the report to conclude that the collapse was covered under the policy.

The jury could likewise find the collapse was not subject to any of the policy's exclusions. Viewing the facts in Hentz's favor, the collapse had two causes: weight on the wall, and deterioration. Because there were two or more causes of the collapse, it would be excluded under the policy if deterioration was a "predominant cause." Mot. for Summ. J., App., A155. Based on Hentz's expert report, the jury could conclude that deterioration was not a predominant cause of the collapse, but was instead a contributing cause. The report merely says both deterioration and weight played a role in the collapse. It is the role of the jury, not the Court, to weigh the parties' evidence and decide whether deterioration was a predominant cause of the collapse. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter."); *see also Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 716 (3d Cir. 2018) (noting that, in tort cases, issues of causation should generally be decided by the jury at trial, not the judge on summary judgment). Because a jury could

---

[2] The Court also notes that Hentz's daughter, who was in the house when the wall collapsed, is scheduled to appear as a witness at trial. During Hentz's deposition, she explained that her daughter was in the basement of the house when "[s]he heard a boom, and she ran upstairs and saw all the cloud and stuff from the wall." Mot. for Summ. J., App., A27. Hentz's daughter's testimony could therefore also support the conclusion that the collapse of the wall was sudden.

find deterioration was not a predominant cause of the collapse, the Court will deny summary judgment on this claim.[3]

On the other hand, summary judgment is appropriate on Hentz's bad faith claim. Under Pennsylvania law, an insurer is liable when "the insurer has acted in bad faith toward the insured." 42 Pa. Con. Stat. § 8371. "[T]o prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). "Thus, an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011), *as amended* (Dec. 9, 2011). In the summary judgment stage, a court must be mindful of the plaintiff's burden at trial to provide clear and convincing evidence of bad faith. *Id.*

Viewing the facts in the light most favorable to Hentz, Allstate had a reasonable basis for denying Hentz's claim. Allstate denied Hentz's claim after it received Donan's report concluding the collapse was caused by shifting soil and foundation settlement. Donan was a forensic engineering firm hired to determine the cause of the collapse and both causes it reported were excluded under the policy. Hentz does not dispute that Allstate received this report, that Donan was a reputable forensic engineering company, or that these causes would be excluded under the insurance policy. Instead, Hentz argues Allstate should have reconsidered its decision to deny

---

[3] In support of its argument that the exclusion applies, Allstate cites to *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 667 (W.D. Pa. 2012). While *Hamm* addresses the same Allstate policy, *Hamm*'s discussion of policy exclusions is not relevant to this case. In *Hamm*, the court did not need to determine which of multiple causes predominated because both causes were subject to separate exclusions. *Id.* at 667-68 (explaining the combined effect of the policy's weather exclusion and the policy's deterioration exclusion). Here, unlike in *Hamm*, one of the causes at issue, weight on the wall, is not subject to any exclusion.

coverage when it received Hentz's expert report on February 21, 2019. However, the mere fact that the parties disagree about coverage is not enough to show bad faith. *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012) (affirming summary judgment on a bad faith claim when the plaintiff could only show the parties disagreed about coverage).

Hentz also argues Allstate acted in bad faith because it ignored the possibility that Hentz's house would be demolished. Although the destruction of Hentz's house is tragic, it is not relevant to Hentz's bad faith claim. If the collapse was not covered under the insurance policy, Allstate would not have been obligated to pay Hentz regardless of whether her house was later demolished. In other words, whether the house was demolished would have no impact on Allstate's coverage decision. Therefore, Hentz's evidence that Allstate ignored the possibility that her house might be demolished has no impact on whether Allstate had a reasonable basis for denying Hentz's claim. Because Hentz cannot present any evidence to dispute that Allstate had a reasonable basis for denying her insurance claim, the Court will grant summary judgment on Hentz's bad faith claim.

**CONCLUSION**

The Court will deny summary judgment on the breach of contract claim because a reasonable jury could conclude that excessive weight was the predominant cause of the collapse. The Court will grant summary judgment on the bad faith claim because the undisputed facts show Allstate had a reasonable basis for denying Hentz's claim.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez____
Juan R. Sánchez, C.J.